# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

NUSRAT RIZVI AND EILEEN RIZVI,
    *Plaintiffs*,

    v.

ALLSTATE CORPORATION, DALLAS C. DODGE, SR., AND A. E. OBERHAUS, INC.,
    *Defendants*.

No. 3:18-cv-01921 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

Dallas C. Dodge, Sr. and A.E. Oberhaus, Inc. ("Oberhaus"), both Defendants in this lawsuit, move to dismiss the Complaint of Nusrat Rizvi and Eileen Rizvi ("Rizvis" or, collectively, "Plaintiffs") under Fed. R. Civ. P. 12(b)(4) for insufficient process, Fed. R. Civ. P. 12(b)(5) for insufficient service of process, and Fed. R. Civ. P. 10(b) for failing to separate each cause of action against them. Motion to Dismiss, ECF. No. 10 at 1 (Dec. 19, 2018) ("Oberhaus Mot."); Memorandum of Law in Support of Motion to Dismiss, ECF No. 11 at 1 (Dec. 19, 2018) ("Oberhaus Mem."). Additionally, they have moved to dismiss the Rizvi's Civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim for violating the statute of limitations, and all four counts of the Complaint under Fed. R. Civ. P. 12(b)(6). Oberhaus Mem. at 1.

The Rizvis have objected.

Allstate Corporation ("Allstate"), another Defendant, also moves to dismiss the Rizvis's Complaint in its entirety, Motion to Dismiss, ECF No. 26 (Feb. 25, 2019) ("Allstate Mot."),

1

raising similar grounds for dismissal. Memorandum of Law In Support of Motion to Dismiss, ECF No. 27 (Feb. 25, 2019) ("Allstate Mem.").

The Rizvis have not filed anything in response to the Allstate motion to dismiss. *See* Docket Entries.[1]

For the reasons explained below, the Court **GRANTS** the motions to dismiss.

The sole federal claim in this lawsuit is dismissed and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual Allegations

On or about January 6, 2004, allegedly after extensive water damage to their home, the Rizvis filed an insurance claim with the Allstate Corporation to pay for allegedly damaged furniture, which consisted of a Mastercraft dining set with a table and six chairs, as well as a Mastercraft china cabinet. *Id.* ¶¶ 11-12. The dining table allegedly is handmade in Italy with inlaid rosewood, gold leaf, and antique brass. *Id.* ¶ 14.

Allstate allegedly employed Adam Colagrossi to appraise the damage to the dining table, and he did so, in consultation with Richard D. Orsi, an antiques and fine furniture restorer. *Id.* ¶¶ 16-17. On October 24, 2005, Mr. Orsi allegedly stated that he could not restore "the existing sheen exactly because of the finishing technique used by the manufacturer." *Id.* ¶ 19. On October 26, 2005, Mr. Orsi also allegedly admitted that "it cannot be guaranteed that the main part of the table will exactly match the undamaged leaves" of the table." *Id.* ¶ 20.[3]

---

[1] The Rizvis had until March 18, 2019 to file a timely response, and have not as of the date of this ruling.

[2] All factual allegations are drawn from the Rizvis's Complaint. Complaint, ECF No. 1 (Nov. 27, 2018).

[3] The Rizvis cite to an Exhibit B and C as the written source of the statements made by Mr. Orsi, but neither were filed with the Court. The Rizvis did not file any exhibits with the Court, nor did they seek to file an amended complaint at any point since they filed this lawsuit on November 27, 2018. In any event, the absence of these

On October 27, 2005, Mr. Dallas Dodge, Sr., was selected as an umpire to oversee the appraisal dispute. *Id.* ¶ 21. Mr. Dodge allegedly acknowledged that the dining table sustained some water damage, but "opined that the matter had been 'blown out of proportion.'" *Id.* ¶ 22 (citing Exhibit E, which is not found anywhere in the materials filed by Plaintiff to the Court). Mr. Dodge allegedly awarded the Rizvis $3,709.68, "an amount substantially less than the cost it would take to repair and/or replace their dining table." *Id.* ¶ 24.

The Rizvis allege that it would cost $150,000 to restore the table to its original condition, far more than the amount awarded by Mr. Dodge and Allstate. *Id.* ¶ 25.

### B. Procedural History

On November 27, 2018, the Rizvis sued the Allstate Corporation ("Allstate"), Dallas C. Dodge, Sr. ("Mr. Dodge" or "Dodge"), and A.E. Oberhaus, Inc. ("Oberhaus") (collectively, "Defendants") in this Court. *See* Complaint ¶ 1.

The Rizvis alleged one federal claim and three common law claims: violation of the Civil RICO Act, 18 U.S.C. § 1961 (Count One), *id.* ¶¶ 26-31; fraudulent concealment (Count Two), *id.* ¶¶ 32-40; fraudulent misrepresentation (Count Three), *id.* ¶¶ 41-29; and negligent misrepresentation (Count Four), *id.* ¶¶ 50-55.

In support of their first cause of action under the Civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Rizvis allege that a "special relationship" existed over many years between the defendants, such that "[Mr. Dodge] and [Oberhaus] were used by [Allstate] to act as umpire for claims" between Allstate and its claimants, "which were in dispute because claimants believed they were severely [underpaid] for their insurance claims." *Id.* ¶ 27.

---

documents had no effect on the Court's decision. As discussed below, this lawsuit simply fails under the applicable law.

3

In exchange for "a steady stream of clients," Mr. Dodge and Oberhaus allegedly would help to ensure that Allstate would pay far less than they should in the event of a loss. *Id.* ¶ 28. The Rizvis allege that Allstate's home office in Illinois gave specific instructions to Mr. Dodge and Oberhaus, thus conducting the enterprise across state lines, and that, over the course of many years, the Defendants corresponded about their special relationship by mail, e-mail, and telephone. *Id.* ¶ 29.

In support of their second cause of action under fraudulent concealment, the Rizvis further allege that, in July of 2018, Mr. Rizvi discovered through conversations with a few former Allstate employees "that a business relationship existed between" the Defendants, "whereby the parties conspired to defraud policyholders and significantly lessen the amounts which would be paid to them in the event of a loss." *Id.* ¶ 33. Mr. Dodge and Oberhaus would serve as an umpire for disputed insurance claims and award "substantially lower than that which was needed to cover the losses of policyholders."[4] *Id.* ¶ 35.

The Rizvis allege that this business relationship was never disclosed to them, and had they been aware of the special relationship that allegedly existed, they would not have entered into a contract with Allstate on December 23, 2003. *Id.* ¶ 37. "But for the similarity discovered amongst other policyholders, Mr. Rizvi never would have been aware of the fraud not to mention being reasonably able to discover this fraudulent activity." *Id.* ¶ 39.

In support of their third cause of action under fraudulent misrepresentation, the Rizvis allege that an Allstate agent assured them in December 2017[5] that "high-quality items within

---

[4] The Rizvis do not make clear the relationship between Mr. Dodge and Oberhaus.

[5] These dates do not follow the chronological account set for by Plaintiffs, so the Court proceeds under the assumption that the date references a date earlier than January 6, 2004, when the Plaintiffs filed their insurance claim with Allstate. Compl. ¶¶ 11, 49.

[their] home" would be protected under Allstate's homeowner's insurance policy. *Id.* ¶¶ 42-45. The Rizvis allegedly relied on these representations when they entered into a homeowner's insurance contract with Allstate on December 23, 2017. *Id.* ¶ 46. The Rizvis allege Allstate and its agents knew these statements were false due to their "long-standing relationship with [Mr. Dodge] and [Oberhaus], which guaranteed that they would not have to honor their contractual commitments," *id.* ¶¶ 47-48, and that they did not honor the Rizvis's policy in light of the loss suffered on January 6, 2004, instead offering "a mere $3,709.68" for a policy with coverage up to $249,000. *Id.* ¶¶ 46, 49.

Finally, in support of their fourth cause of action under negligent misrepresentation, the Rizvis allege that, on December 23, 2003, they were misled by the Allstate agent's representations "that their home would be covered in the event of damage to the structure as well as providing protection of the items inside the home." *Id.* ¶ 51. The Rizvis allege that the business relationship between the Defendants was intentionally concealed from them and others "with the specific intention to deceive otherwise [Allstate] would have disclosed their relationship prior to luring [the Rizvis] into a homeowner's insurance contract." *Id.* ¶ 54.

The Rizvis allege that they suffered harm because their possessions were not protected. They seek compensatory damages in the amount of $150,00 for the replacement of insured personal property, interests and costs, common law punitive damages, and any other relief that the Court deems just.

On December 12, 2018, Mr. Dodge and Oberhaus submitted a motion to dismiss along with a supporting memorandum. *See* Oberhaus Mot.; Oberhaus Mem.

They argue that the Rizvis failed to comply with Federal Rules of Civil Procedure 4 and 10(b), and the Complaint therefore should be dismissed. *See* Oberhaus Mot. at 1. These two

Defendants also argue that Plaintiffs's RICO claim is barred by the statute of limitations and should be dismissed. *See id.* Finally, Defendants argue that the Rizvi's Complaint should be dismissed for failure to state a claim under Rule 12(b)(6). *See id.*

On January 2, 2019, the Rizvis filed a motion to disqualify Judge Victor A. Bolden from hearing this case. *See* Motion to Disqualify Judge, ECF No.12 (Jan. 2, 2019). Treating the Rizvi's motion to disqualify as a motion for recusal, the Court denied the motion on January 10, 2019. *See* Ruling and Order on Motion for Recusal, ECF No. 13 (Jan. 10, 2019).

On February 1, 2019, the Rizvis submitted an objection to Defendants's motion to dismiss. *See* Objection to Motion to Dismiss, ECF No. 22 (Feb. 1, 2019) ("Rizvi Obj.").

On February 15, 2019, these two Defendants filed a reply to Plaintiffs's objection. to the motion. *See* Reply, ECF No. 23 (Feb. 15, 2019) ("Oberhaus Reply").

On February 25, 2019, Allstate filed a motion to dismiss the Rizvis's complaint. *See* Allstate Mot.; Allstate Mem.

The Rizvis have not responded to this motion.[6]

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(4) requires that a defendant establish insufficient process under Rule 4 of the Federal Rules of Civil Procedure. "A 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons."[7] 5B C.

---

[6] Plaintiffs did request that the Clerk of Court re-issue an electronic summons to all of the defendants on September 17, 2019, but that action does not affect this ruling. *See* Fed. R. Civ. P. 4(m) (noting ninety (90) days as the time limit for service); *see also* L.R. 4(d) (noting 90 days as the time limit for service, absent "a motion for additional time on good cause shown or, if no extension is required, a statement of explanation).

[7] Rule 4(b) states, "On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it otthe plaintiff for service on the defendant. A summons – or a copy of a summons that is addressed to multiple defendants – must be issued for each defendant to be served." A defendant's "[o]bjections to sufficiency of process under Fed. R. Civ. P. 12(b)(4)

Wright & A. Miller, *Federal Practice and Procedure: Civil 3d* § 1353; *Green v. Wright*, 389 F. Supp. 2d 416, 426 (D. Conn. 2005).

Under Federal Rule of Civil Procedure 12(b)(5), a party may file a motion to dismiss due to "insufficient service of process." Fed. R. Civ. P. 12(b)(5). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). Once a defendant challenges validity of service, "it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

Although Federal Rule of Civil Procedure 10(b) requires a party to "state its claims or defenses in numbered paragraphs, " dismissal is not the appropriate remedy for a failure to state claims in separate counts. *See Haberkamp v. Steele*, 1992 WL 84544, at *8 (S.D.N.Y. Apr. 15, 1992). "Under Rule 10(b) a separation of claims into separate counts is mandatory only when necessary to facilitate clear presentation." *Original Ballet Russe v. Ballet Theatre*, 133 F.2d 187, 189 (2d Cir. 1943). In the face of a vague complaint, a defendant should make a motion for a more definite statement under Rule 12(e). *See Fields v. Village of Skokie*, 502 F. Supp. 456, 460 (N.D. Ill. Dec. 3, 1980).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

---

must identify substantive deficiencies in the summons, complaint or accompanying documentation." *DiFillippo v. Special Metals. Corp.*, 299 F.R.D. 348. 352-53 (N.D.N.Y. 2014) (citation omitted).

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), cert. denied, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider

"matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

With *pro se* litigants, this Court must liberally construe their filings to raise the "strongest arguments it suggests." *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006); *see also Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman,* 470 F.3d at 474).

## III. DISCUSSION

### A. The Claims Against Oberhaus and Dodge

#### 1. The application of Fed. R. Civ. P. Rules 12(b)(4) and 12(b)(5)

Oberhaus and Mr. Dodge assert various issues with process and service of process under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5).

First, Oberhaus and Mr. Dodge argue that the Rizvis failed to serve them with the summons issued by the court. Oberhaus Mem. at 6. Plaintiffs instead crafted their own summons, which included neither the Clerk's signature nor the Court's seal, and included incorrect dates for which the Defendants were to appear and defend. *Id.* at 6-7. The summons stated the Defendants were to appear and defend within twenty days from the service of the Complaint, where the proper requirement is twenty-one days. *Id.*

Second, Defendants argue that the Rizvis violated Rule 4(c) by 1) attempting to serve Defendants via certified mail, 2) serving only a single copy of the complaint to both Mr. Dodge and Oberhaus at Oberhaus's principal place of business, and 3) failing to serve the full Complaint with all Exhibits. Oberhaus Mem. at 8-9. They note that this Court has already

9

addressed similar issues with the Rizvis before. *Id.* at 9; *see Rizvi v. Urstadt Biddle Properties Inc.*, 2018 WL 4688305, at *10 (D. Conn. Sept. 28, 2018) (noting that "Plaintiffs have admitted their failure to properly serve Defendant . . . and have not replied to the process allegations of the remaining Defendants. Plaintiffs have thus admitted that they failed to properly serve the UBP Defendants . . . . The Court therefore would have to grant dismissal as to these Defendants, if it reached the issues of sufficient process.").

In response, Plaintiffs argue that this District tends to interpret Rule 4(b)'s provisions liberally, and, by extension, Rule 4(a). Rizvi Reply at 2-3; *see Bates v. City of Bristol*, No. 3:17-cv-1066, 2018 U.S. Dist. LEXIS 49687, at *20 (D. Conn. Mar. 26, 2018) ("[T]echnical errors on a summons do not automatically render service on a defendant insufficient."). The Rizvis also argue that other district court decisions within the Second Circuit similarly place substance above form for the summons. *Id.*; *see, e.g.*, *Krieger v. Am. Express Fin. Advisors,* 2000 U.S. Dist. LEXIS 1663, at *4 (W.D.N.Y. Feb. 16, 2000) (denying defendant's motion to dismiss for insufficient service of process where plaintiff served an unsigned and unsealed summons). In their view, the Rizvis's unsigned and unsealed summons should not bar them "from their day in court," Rizvi Reply at 4, and neither should "the absence of a signature and seal constitute a 'flagrant substantive error.'" *Id.* (citing *Durant v. Traditional Invest., Ltd.*, 1990 U.S. Dist. LEXIS 3074, at *4 (S.D.N.Y. Mar. 22, 1990) (holding that a summons without the clerk's signature and court's seal was not a flagrant substantive error because the defendant received sufficient notice and was not prejudiced). The Rizvis emphasize that they "complied with this court's liberal interpretation of Rule 4(a)." Rizvi Reply at 4.

Furthermore, the Rizvis argue that even if the Defendants's allegations were true, they would not constitute a failure to comply with Rule 4(c). Rizvi Reply at 5. They emphasize that

10

the purpose of the service requirements is "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Rizvis argue that because Mr. Dodge and Oberhaus are business partners and represented by the same counsel, it makes sense for them to assume that one copy mailed to Oberhaus would also put Mr. Dodge on notice. So, because the Defendants received notice, even if incorrectly per Rule 4(c), Plaintiffs urge the Court to consider their failure a mere "techical [sic] imperfection in service." Rizvi Reply at 7.

In reply, Mr. Dodge and Oberhaus highlight that "*pro se* plaintiffs are not excused from complying with procedural rules." Oberhaus Reply at 2; *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

The Court agrees.

In this case, the Plaintiffs's summons failed to contain three of the seven required elements of Rule 4(a)(1). It includes the wrong date for which defendants were required to appear and defend, it does not bear the court's seal, and it does not include the clerk's signature. This goes beyond a mere technical flaw and plainly violates Rule 4(b). *See, e.g.*, *Macaluso v. N.Y.S. Dep't of Envtl. Conservation,* 115 F.R.D. 16, 18 (E.D.N.Y. 1985) (granting motion to dismiss for insufficient service of process because an unsealed, unsigned summons was not a mere technical defect, but rather a "complete disregard for the requirements of process set forth clearly and concisely in Rule 4").

Because, barely a year ago, the Rizvis's filings presented similar problems in this Court, *see Rizvi,* 2018 WL 4688305, at *10, there is less of a reason to excuse their failure today.

Although *pro se* complaints are "construed liberally," *see Sykes*, 723 F.3d at 403, repetitive service and process issues indicate a flagrant and "complete disregard" for Rule 4's requirements. *See Macaluso*, 115 F.R.D. at 18. The Court cannot ignore their failure to provide all of the Exhibits referenced in their Complaint to Defendants.[8] Significantly, neither Connecticut law nor the Federal Rules provide for service by mail, as the Rizvis have attempted to do here. *See* Conn. Gen. Stat. Ann. § 52. As a result, the Rizvis have also violated Rule 4(c).

In any event, as discussed below, this case must be dismissed for other reasons; this Court therefore will not dismiss this case on this basis.

### 2. The application of Fed. R. Civ. P. Rule 10(b)

Mr. Dodge and Oberhaus argue that the Rizvis's Complaint fails to separate each cause of action against each Defendant per Rule 10(b)'s requirements, thereby making it unclear to whom the allegation or cause of action is addressing. Oberhaus Mem. at 11.

The Rizvis argue that Defendants's allegation is disingenuous, because "Defendants are charged with identical causes of action based upon the same transaction." Rizvi Reply at 8. Furthermore, even if the Court were to find that the Rizvis failed to comply with Rule 10(b), the Court should grant them leave to amend their Complaint.

The Court agrees.

The Rizvi Complaint satisfies Rule 10(b)'s requirements because it is sufficiently clear as to the allegations and against whom they are alleged, i.e., all Defendants named in the Complaint. Furthermore, dismissal is not the appropriate remedy for a failure to state claims in separate counts as required by Rule 10(b). *See Original Ballet Russe*, 133 F.2d at 189.

---

[8] The Rizvis have also failed to amend to their Complaint the various exhibits referenced in their filings, despite the Court's Notice on November 28, 2018, requiring all counsel or self-represented parties to serve all parties with attached documents and copies of relevant documents. *See* Notice to Counsel, ECF No. 5 (Nov. 28, 2019).

12

As a result, the Court denies the motion to dismiss on Rule 10(b) grounds.

### 3. The RICO Claim

#### a. The applicable statute of limitations

Defendants argue that Count One is time-barred. The RICO statute does not expressly provide a statute of limitations. *See* 18 U.S.C. §§ 1961-1968. In *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, the Supreme Court established that the statute of limitations for a civil RICO claim is four years. *See* 483 U.S. 143 (1987). This four-year window begins tolling as soon as the injured party discovers or should have discovered the injury. *See Rotella v. Wood*, 528 U.S. 549, 553 (2000).

"Federal courts . . . generally apply a discovery accrual rule when a statute is silent on the issue, as civil RICO is here." *Id.* at 555. Even though "a pattern of predicate acts may well be complex, concealed, or fraudulent," thus requiring "considerable effort" on the part of a RICO plaintiff, the clock does not delay until the plaintiff has discovered a pattern of predicate activity. *Id.* at 556-59. In so concluding, the Court emphasized that "the object of civil RICO is thus not merely to compensate victims but to turn them into prosecutors, private attorneys general, dedicated to eliminating racketeering activity." *Id.* at 557 (quotations omitted).

Generally, a plaintiff must have actual or inquiry notice of the alleged injury at issue in order for the clock to start running. *See Koch v. Christine's Int'l PLC*, 699 F.3d 141, 150-51 (2d Cir. 2012). The court in *Lentell* established when inquiry notice occurs, in another context, a securities fraud case, *see Lentell v. Merrill Lynch & Co.*, 393 F.3d 161, 168 (2d. Cir. 2005):

> Inquiry notice-often called "storm warnings" in the securities context-gives rise to a duty of inquiry "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." In such circumstances, the imputation of knowledge will be timed in one of two ways: (i) "[i]f the investor makes no inquiry once the duty arises, knowledge will be imputed as of the date the duty arose"; and (ii) if some inquiry is made, "we will impute knowledge of

> what an investor in the exercise of reasonable diligence[ ] should have discovered concerning the fraud, and in such cases the limitations period begins to run from the date such inquiry should have revealed the fraud."

> *Id.* (citations omitted).

This view of the law also applies to RICO actions. *See Koch*, 699 F.3d at 151-52 ("[T]he *Lentell* articulation of inquiry notice continues to apply in RICO actions."). Thus, the RICO statute of limitations "runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 328 Fed. Appx. 695, 697 (2009).

Defendants argue that, if Plaintiffs's allegations are accepted as true, then they had knowledge of the alleged "special relationship" between Defendants upon issuance of the appraisal award on October 27, 2005. Oberhaus Mem. at 14. The major discrepancy between the award of "$3,709.69, an amount substantially less than the cost it would take to repair and/or replace their dining table," Compl. ¶ 24, and the Rizvis's allegation that "it would cost an estimated $150,000" to replace the table, Compl. ¶ 25, should have prompted an inquiry. Because this event occurred at the end of 2005, the statute of limitations ran in 2009.

The Rizvis argue that the discrepancy between the estimated cost to repair their table and the actual amount awarded "does not in itself provide a sufficient 'storm warning' in 2005." Rizvi Reply at 10. Instead, they argue that the "lowballed insurance company award[]" constituted a "common place event," *id.* at 10-11, and that they "were not under inquiry notice until it can be shown Plaintiffs had full knowledge of the extent of the special relationship between Defendants." *Id.* at 11. Because "Defendants have not shown when Plaintiffs allegedly possessed this knowledge," the Rizvis argue that their RICO claim is not time barred. *Id.*

14

In response, Mr. Dodge and Oberhaus emphasize that if there was a constant fight over allegedly low insurance company awards, then these awards would provide sufficient notice and prompt the Rizvis's duty to investigate. Oberhaus Reply at 4-5.

The Court agrees.

The injury discovery accrual rule applies to civil RICO actions, and not the injury and pattern discovery rule. *See Rotella*, 528 U.S. at 554-55, ("[I]n applying a discovery accrual rule, . . . discovery of the injury, not discovery of the other elements of the claim, is what starts the clock."). In *Koch*, which affirmed the district court's dismissal of plaintiff's civil RICO and other claims for being time-barred at the motion to dismiss stage, the Second Circuit noted that "knowledge of facts that would suggest to a reasonably intelligent person the probability that the person has been injured is dispositive." *Koch*, 699 F. 3d at 153. "[O]nce there are sufficient 'storm warnings' to trigger the duty to inquire, and the duty arises, if a plaintiff does not inquire within the limitations period, the claim will be time-barred." *Id.*

Thus, it is irrelevant that the Rizvis did not have "full knowledge" of the alleged "special relationship" between Allstate, Mr. Dodge, and Oberhaus, until their conversations with former Allstate employees in July 2018. *See* Rizvi Reply at 11; Compl. ¶ 33. The operative date is when the Plaintiffs discovered or should have discovered their alleged injury.

Here, that date is October 27, 2005, when Mr. Dodge presented the final appraisal award to the Rizvis. Compl. ¶¶ 21-24. Even if the Rizvis did not have full knowledge of the alleged scheme on this date, the discovery accrual rule does not require this full knowledge. The award itself is the injury, and thus provides the notice of inquiry, and begins the four-year statute of limitations. The time for the Rizvis to bring their civil RICO claim thus expired on October 27, 2009.

Accordingly, the Court will dismiss the civil RICO claim on statute of limitations grounds.

### b. The application of Fed. R. Civ. P. Rule 12(b)(6)

Defendants further allege that Plaintiffs have failed to state any plausible claims of relief under Rule 12(b)(6). Even though the civil RICO claim will be dismissed on statute of limitations grounds, the Court will also address the failure of that claim as a matter of law.

"To substantiate a claim of RICO activity, a Plaintiff must demonstrate serious criminal activity conducted by an established criminal enterprise." *Rizvi*, 2018 WL 4688305 at *8 (citing *Carousel Foods of Am., Inc. v. Abrams & Co.*, 423 F. Supp. 2d 119, 122 (S.D.N.Y. 2006)). The RICO statute states:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b).

A civil RICO claim therefore "supplement[s] Government efforts . . . in the public good." *See Rotella*, 528 U.S. at 550. "Typically, RICO investigations are conducted by the government on serious, often violent criminal syndicates." *Rizvi*, 2018 WL 4688305 at *8 (citing *United States v. Allen,* 155 F.3d 35, 37 (2d Cir. 1998)).

A plaintiff must thus show conduct of an enterprise through a pattern of racketeering activity that meets the requisite "magnitude of criminality involved in RICO cases." *See Rizvi*, 2018 WL 4688305 at *9. Racketeering activity can be "any act or threat involving" certain state law crimes or specified federal offenses. *See* 18 U.S.C. § 1961. To establish a pattern, the RICO statute requires at least two acts of racketeering activity within a ten-year period. *See id.*

Defendants argue that Plaintiffs fail to set forth a plausible claim or to sufficiently allege an enterprise between the Defendants. *See* Oberhaus Mem. at 17-22. They argue extensively that the Rizvi's Complaint is replete with conclusory allegations. *Id.* Importantly, according to the Defendants, the Rizvis fail to provide additional specific acts beyond the selection of Mr. Dodge as umpire on October 25, 2005 and the conversations with a few former employees of Allstate in July of 2018. *See* Oberhaus Mem. at 22; Complaint ¶¶ 21, 33. As a result, the Rizvis arguably fall short of the *Iqbal* and *Twombly*'s 12(b)(6) standard. *See Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555 (The court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

In response, the Rizvis merely assert that their Complaint is sufficient, and if not, that they "should be freely granted leave to amend." Rizvi Obj. at 12.

The Court disagrees.

Although a court should freely grant leave to amend a pleading "when justice so requires," Fed. R. Civ. P. 15(a)(3), the Rizvis never sought to amend their Complaint. *See* Docket Entries. More importantly, amendment of the Rizvis's Complaint with respect to their civil RICO claim would be futile. *See* Oberhaus Reply at 5. The Rizvis's claims about a "special relationship" between Defendants falls short of the requisite level of criminality for RICO. *See Rizvi*, 2018 WL 4688305 at *9 ("Nothing in the pleadings supports a finding that Defendants engaged in a conspiracy on the level of a RICO syndicate."). The crux of the Rizvis's complaint is that Allstate appointed Mr. Dodge of Oberhaus to serve as the umpire in their appraisal, and that his appointment evidences the special relationship between the Defendants. Complaint ¶¶ 27-31.

But the appraisers, not a party in the appraisal, select the umpire. *See* Conn. Gen. Stat. Ann. § 38a-307a ("In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser . . .The appraisers shall first select a competent and disinterested umpire[.]"). Following Connecticut law, *see id.*, Allstate and the Rizvis each appointed their own appraisers, who then jointly appointed Mr. Dodge as umpire. *See* Allstate Mem. at 1. Nothing in the pleadings supports a finding that Allstate alone selected Mr. Dodge to serve as umpire. *See* Complaint ¶¶ 11-55. The "special relationship" underlying the entire Complaint thus becomes even less plausible. *See Iqbal,* 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

Count One therefore should be dismissed as to Mr. Dodge and Oberhaus.

Because Count One is the only federal cause of action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see, e.g.*, *Castellano v. Bd. Of Trustees*, 937 F.2d 752, 758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1991) ("[I]f the federal claims are dismissed before trial . . . , the state claims should be dismissed as well.").

Accordingly, the Court will dismiss this lawsuit, at least in federal court, against Mr. Dodge and Oberhaus, in its entirety.

B. The Claims Against Allstate

### 1. The application of Fed. R. Civ. P. Rules 12(b)(4) and 12(b)(5)

Allstate raises the same service and process issues with respect to the Rizvis's lawsuit. Allstate Mem. at 4-7.

For the same reasons as detailed above, there are grounds for dismissing these claims under 12(b)(4) and 12(b)(5), but the Court will address the substance of Allstate's claims.

### 2. The RICO Claim

Defendant Allstate further alleges that the Rizvis have failed to state any plausible claims of relief. Allstate argues that all of Plaintiffs's counts should be dismissed for failure to state a claim because: (1) the RICO claim is untimely and improperly pleaded, Allstate Mem. at 7-13; (2) fraudulent concealment is not a recognized cause of action under Connecticut common law, *id.* at 13-14; (3) fraudulent misrepresentation has not been plausibly alleged, *id.* at 14-15; and (4) the claim of negligent misrepresentation is untimely and does not comply with the heightened pleading standard of Federal Rule of Civil Procedure 9(b), *id.* at 15-17.

Because the RICO claim against Allstate fails for the same reasons as the claims against Oberhaus and Mr. Dodge, both for lack of timeliness and a failure to state a claim, this claim also will be dismissed against Allstate, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c) (3); *Castellano*, 937 F.2d at 758.

Accordingly, the Court will dismiss the Complaint against Allstate in its entirety.

## IV. CONCLUSION

For the foregoing reasons, Defendants's motions to dismiss are **GRANTED**.

The sole federal claim is dismissed and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

The Clerk of the Court is directed respectfully to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 25th day of September, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE